

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-14-2007

# Steward v. Sears Roebuck & Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3360

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Steward v. Sears Roebuck & Co" (2007). *2007 Decisions.* Paper 592.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/592

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-3360

_____

GUNNAR STEWARD,
Appellant

v.

SEARS ROEBUCK & COMPANY

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 02-cv-08921)
District Judge:  Honorable Thomas J. Rueter

_____

Argued July 11, 2007
Before:  RENDELL, AMBRO and NYGAARD, <u>Circuit</u> <u>Judges</u>.

(Filed August 14, 2007)

_____

Carmen R. Matos    **[ARGUED]**
George P. Wood
Stewart, Wood & Matos
411 Cherry Street
Norristown, PA  19401
   *Counsel for Appellant*

Sidney R. Steinberg    **[ARGUED]**
Robert J. Toy
Post & Schell
1600 John F. Kennedy Boulevard
Four Penn Center, 13th Floor
Philadelphia, PA  19103
   *Counsel for Appellee*

RENDELL, *Circuit Judge.*

Gunnar Steward sued his employer, Sears, Roebuck & Co., for terminating him in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 261 *et seq.* Steward appeals the District Court's order granting judgment as a matter of law in favor of Sears and, in the alternative, granting Sears' motion for a new trial. We will reverse.

I.

Although the parties are familiar with the record, we review it nonetheless because the presence of certain facts and evidence in the record is crucial to our review, given the nature of the motions before the District Court.

Steward began working at Sears as a Level I Technician in March 1979. After a series of gradual promotions, he obtained the position of Technical Manager in Sears' Wilmington facility in December 1998. In this capacity, Steward was required to support, organize, direct, coach, and develop the technical work force to provide service to customers at home or in the Sears service unit. Steward was terminated on July 2, 2001, at the age of 50. At the time of Steward's termination, there was one other Technical Manager located in the Wilmington facility: Tony Carter, age 45. Joyce Sipple, age 60, was a Technical Manager at the Dover facility and Brian Merkel, age 35, was a Technical Manager at the Reading facility. Mark DeWit, age 33, was a manager at the Wilmington

facility in early 2001 and was given the position of Technical Manager on or after July 1, 2001.[1]

At trial, Steward presented his employment record, with his job titles and salaries listed, as well as several certificates of achievement for completion of various courses and programs. Steward also presented his 1999 performance review, completed by the then-District Service Manager, Roy Vasseur. Steward received a "4" (out of 5) in both Business Results and Leadership in this review.[2] Steward also received a rating of "4" in Customer Total Repair Index, Associate Total Repair Index, Building Relationships, Customer Satisfaction, and in completion of repairs on the first try. Mr. Vasseur testified that Steward was at "above expectations" for leadership at the end of 1999. App. 1199. Following this review, Steward received a merit increase in his salary and a bonus in March 2000. He received another salary increase in June 2000. Prior to Vasseur's departure in August 2000, he again reviewed Steward. He rated Steward a "4" in Customer Satisfaction, Building Relationships, and Teamwork, and a "3" in all other

---

[1]Steward argues that the jury could have reasonably concluded that DeWit was promoted to Technical Manager on July 1, 2001 based on Sears' computer printouts. The printouts provide information about DeWit's Employee Review. The "From/To Date" on the report is 7/01/2001 to 7/20/2002 and the Review Date is 1/31/2003. The Job Code for DeWit is "Technical Manager." App. 1865. Another printout detailing an Employee Review for DeWit is for a "From/To Date"of 1/01/2001 to 12/31/2001 and the Review Date is 2/18/2002. The Job Code is again "Technical Manager." App. 1864. DeWit testified that he did not know why the report would indicate that he was a Technical Manager from 2001 to 2002.

[2] A score of "4" means "consistently exceeds expectations," "3" means "consistently meets expectations," and "2" means "some expectations met." App. 1818.

3

categories. Steward also introduced the Sears productivity report for 2000, which showed that Steward's technicians handled the largest number of calls.

Carter and Merkel both testified about their impressions of Steward's performance. Carter testified, concerning Steward's production, that "I would say it was very high. I think he's an excellent motivator. A lot of people liked him that came to me afterwards, because a lot of the shop technicians knew me prior to him getting there and ... then they came to me and said, you know what, he's like you, he cares about us. And it made me feel good to hear somebody say that about him, because we worked together as a team." App. 1298. Carter also testified, concerning Steward's interaction with customers: "I thought he did a great job with customers, if I had to say so myself, I think he did a great job with them." App. 1299. Merkel testified that he found Steward acceptable, agreeable and responsive. He agreed that Steward gave him what he needed and responded to him when he needed it.

In mid-December 2000, Phillip Schweizer, then age 33, became the District Service Manager at the Wilmington facility. Schweizer supervised Steward, Carter, Merkel, DeWit and Sipple. Steward testified that, from the beginning, Schweizer treated him differently than the other Technical Managers. Steward testified that Schweizer "wasn't very cordial when we first started interacting the first couple of weeks." App. 431. In his relations with the other Technical Managers, Schweizer "appeared to be much friendlier, more – or just more casual, conversation, things like that." *Id*. When Schweizer brought his wife to the facility, he introduced her to a younger manager and to

4

other people at the facility, but not to Steward. Schweizer also directed Carter to move the office shared by Carter and Steward without telling Steward.

Prior to February 2001, Steward had never been warned, reprimanded or counseled by Sears. In February 2001, a couple months after Schweizer became the District Service Manager, Schweizer gave Steward a performance review for the year 2000. In the performance review, Steward was scored a "3" in Business Results, Customer Satisfaction and Ownership, and a "2" in Leadership. App. 1818. For this same period, Carter and Merkel both also received a "3" in Business Results and a "2" in Leadership. Sipple received a "3" in both categories. DeWit received scores of "4" in both Business Results and Leadership.

Steward testified that Schweizer met with Steward and informed Steward that he would receive no bonus for 2000. He also gave Steward a "performance plan for improvement" or PPI.[3] Prior to issuing the PPI, Schweizer did not give Steward a counseling memorandum, as recommended by the Sears PPI policy. The PPI provided a detailed description of Steward's "performance issues":

> *-The established procedure for a Multiple Attempt to repair
> an in home item is to involve the Lead Tech/Tech Manager on
> the Recall.*

---

[3]Schweizer testified that he gave Steward the PPI in March. Steward testified that Schweizer briefly showed him the PPI at the February meeting, but that he did not receive a copy until late February or March. As the District Court noted, the report is dated 21 February, 2000, but both sides agree that the record was completed in 2001. The signatures of Steward and Schweizer on the report are dated "2/3/01," but the report discusses events that occurred on February 7, 2001. App. 1827-28.

5

*-On the RMDS Multiple Attempt report it is clear that the same technicians often go out on the same call three and more times without input from the Tech Manager.*

*-It is often required that the Tech Manager call customers to resolve discrepancies with the service rendered or the cost of the service.*

*- With Customer Montana Gunnar had to be repeatedly informed by the Parts Manager, Parts Pro, Customer Relations Supervisor, and myself before he called the customer. This customer specifically asked to talk to the technicians [sic] manager and Gunnar did not reply as he was "gathering the facts".*

*-There is a weekly GAP meeting where all tech managers are required to bring the following information: the previous weeks actual calls, planned calls, actual hours, planned hours, and training hours by industry.*

*- Gunnar has failed to bring this information to the past 5 meetings. Additionally, he has depended on the excellent work ethics of other tech managers to accomplish this for him.*

*-Gunnar consistently fails to meet deadlines. He was tasked with providing his vacation numbers at the time of the DSM meeting in Gaithersburg. He did not provide those numbers until 7 Feb 01. Additionally, he depended on other tech managers to input the data for him.*

*- Your performance would be greatly improved by adherence to accepted Sear's business standards and established processes.*

App. 1827. Steward testified that the meeting lasted less than five minutes and that he was shocked and upset by what had occurred. During the meeting, Schweizer did not give Steward a copy of the PPI or show him any Sears records supporting Schweizer's criticisms of Steward's performance. Steward wrote on the PPI comments section that "I feel it unfair to be rated for a years performance by someone who has been here for a month." App. 1828. In March 2001, Steward received a salary raise and a bonus.

After Steward received the PPI, he participated in a process called the Parts Distribution Center Sweep (the "PDC Sweep") at the Wilmington facility. This was the first PDC Sweep that Sears had conducted. In this process, the parts stored in a facility's inventory would be reduced, with unnecessary parts being removed, or swept, from the facility's inventory. Prior to the PDC Sweep, Steward and the other Technical Managers attended a planning meeting. Steward testified that he never received any written directives from Sears concerning how to conduct the PDC Sweep. Steward testified that a PDC representative named Mr. Howell told him to remove various parts and that replacement parts would arrive the next morning. The replacement parts did not arrive the next morning. Steward had removed parts from the Wilmington facility that were needed immediately to service customers' lawn mowers, and so he attempted to get more lawn mower parts from another facility. He was, however, unsuccessful. Sears presented evidence at trial that Sipple and Merkel were responsible for the PDC Sweeps in their facilities in Dover and Reading, respectively, and removed only surplus parts from their facilities in the PDC Sweep, and retained the parts necessary to run their facilities.

The required follow-up meeting about Steward's PPI did not occur until April 26, 2001, even though Sears' policy recommends that the PPI follow-up meeting take place 30 days after the initial meeting. At the follow-up meeting, Schweizer placed Steward on a new PPI. Steward testified that Schweizer called Steward into his office, handed Steward the PPI, informed Steward that he had to leave to go to a meeting, and left. Steward sarcastically replied "Is that it?," because he was shocked that he was receiving

7

another PPI.[4]  Steward testified that Schweizer did not show him any documents or records related to customer complaints at this meeting.

The new PPI identified four additional customers with whom plaintiff failed to follow-up properly: customers Stagg, Givens, Rodel, and Gaglia.  The PPI also noted that Steward "[f]ailed to manage shop personnel to maximize productivity" and "[f]ailed to get involved with PDC Process when [he was] identified as one of the leaders."  App. 2496.

At trial, Steward presented a copy of the customer service order for customer Stagg, on which Steward had noted that as of April 14, 2001, the customer was satisfied with the service.  He testified that customer Givens was handled in the normal way and that there was nothing unusual about the service order.  Customer Gaglia was upset that a technician that came to his home was rude and called Steward.  Steward testified that he called the customer back and left a message saying that he would address the issue with the technician.  The customer was angry that Steward did not apologize for the technician's rudeness in his voicemail.  Steward testified that the customer's appliance was taken care of and serviced properly, and that he spoke to the technician, who explained that the customer had wanted him to do additional repairs on the appliance without payment.

---

[4]The District Court found that Steward finished the meeting by saying "Is that it?"  However, according to Steward, Schweizer ended the meeting by announcing that he had to leave.  Steward then said "'Is that it,' very sarcastically because I couldn't believe that I was getting another PPI and he wouldn't even discuss it."  App. 486.

8

In his testimony, Steward noted that there were only four complaining customers identified out of the 17,000 customers that his technicians had serviced that year. He also presented a productivity report for 2000, which showed that 88% of the time Steward's technicians performed and completed the required service within a week. According to this report, Steward had the highest rating in this area out of all of the Technical Managers. He also presented evidence that his technicians completed service on the first attempt 80.5% of the time, while Merkel's technicians did so 78.7% of the time.

After the PPI follow-up meeting, Schweizer transferred responsibility for the maintenance of "road technician trucks" from the "truck stock specialist" to the Technical Managers. When Steward complained to Schweizer about the additional responsibility, Schweizer told him, "Hell, you are old enough, you have been around long enough, you should handle this." App. 519.

Schweizer met with Steward again on May 29, 2001 to discuss the PPI. At this meeting, Schweizer identified several other outstanding problems, including: (1) "freon and OSHA compliance in shops;" (2) "ready times among HA/HE techs;" and (3) "follow through with customers." App. 2499. In the performance plan section, Steward was instructed to return customer phone calls within the business day that the message was received. In addition, Steward was told that the shop must be managed so that orders are ready on the date that the shop promised the customer. In addition, Steward was instructed that the same technician should not go out on the same call three and more times without Steward's intervention. Finally, he was ordered to identify and organize all

9

of the merchandise in the outside storage area for tractors by the end of the day on June 4, 2001.

On May 30, 2001, Steward emailed Schweizer that "I'm not sure whether I'll be able to make the June 4 deadline." App. 2950. Schweizer replied that "[t]he June 4 deadline is a hard deadline and I expect it to be met." App. 2951. Steward failed to clean-up the tractor yard by the June 4 deadline.

Steward was terminated on July 2, 2001. The notice of termination, dated June 27, 2001, explained that Steward was terminated because he "demonstrated a lack of ownership of the responsibilities of a Technical Manager at Sears Product Repair Services." App. 1844. Schweizer listed the following three behaviors as leading to plaintiff's termination:

> *1. Although Mr. Steward has increased his contact with customers, the level of service provided is not at a level commiserate [sic] with his position.*
> *2. Mr. Steward's failure to satisfy customers is demonstrated in missed promise dates in the shop. This is a direct result of Mr. Steward's failure to take ownership of the shop workload.*
> *3. In following through on the last review, dated 5-31-2001, there were specific responsibilities outlined to Mr. Steward. Mr. Steward was to ensure that the outside storage area for the Lawn and Garden Shop was cleaned, organized and all equipment identified by 6-4-2001. Mr. Steward failed to meet the agreed upon deadline and further more [sic] failed to keep me informed or request an extended deadline.*

App. 1844.

In December 2002, Steward sued Sears for terminating his employment in

10

violation of the ADEA. The case was tried before a jury from September 7 through September 19, 2005. Magistrate Judge Rueter presided. The jury returned a verdict in favor of Steward on September 20 and awarded back pay and front pay. The jury found in favor of Sears on the question of whether the discrimination was willful, and awarded no liquidated damages.

Sears then moved pursuant to Rule 50(b) for judgment as a matter of law or, in the alternative, for a new trial under Rule 59(a)(1), and for remittitur. Sears argued that Steward failed to prove a prima facie case of age discrimination and that, even if Steward established a prima facie case, the evidence of intentional discrimination was insufficient for the jury to return a verdict for Steward. Specifically, Sears argued that Steward failed to prove the fourth element of his prima facie case and that, based on the evidence presented, no reasonable jury could conclude that age was a determinative factor in Steward's termination. In addition, Sears urged that, even if Steward proved his prima facie case and presented evidence that cast doubt on Sears' stated reasons for the termination, the jury was not entitled to infer discriminatory intent from this evidence. Sears also contended that errors in the jury instructions and misconduct by Steward's counsel rendered the trial unfair and that a new trial was required. Sears added that the damage award was contrary to the law and to the evidence presented at trial.

The District Court granted Sears' motion for judgment as a matter of law and entered judgment in favor of Sears. The Court concluded that Steward failed to prove the fourth element of his prima facie case because he failed to prove that his coworkers who

11

assumed his job duties were "sufficiently younger" than Steward, or that other, "similarly situated" employees were treated more favorably. *Steward v. Sears, Roebuck & Co.*, No. 02-8921, 2006 WL 1648979, at *12 (E.D. Pa. June 13, 2006). The Court further found that Steward failed to present sufficient evidence to show that Sears' stated reasons for terminating Steward were pretextual. The Court also ruled on Sears' motion for a new trial, as is required by Rule 50(c)(1), and granted the motion on the ground that the verdict was against the clear weight of the evidence. *Id.* at *29. The Court rejected Sears' other arguments for granting a new trial, including "misconduct" by Steward's counsel and an allegedly erroneous jury instruction. Sears' motion for remittitur was denied.

Steward appeals the District Court's order granting judgment as a matter of law in favor of Sears and granting Sears' motion for a new trial.

## II.

The District Court had jurisdiction over this action pursuant to 28 U.S.C. § 1331. We have jurisdiction over Steward's appeal pursuant to 28 U.S.C. § 1291.

We exercise plenary review over an order granting a motion for judgment as a matter of law and apply the same standard as the district court. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993). "Such a motion should be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability. In determining whether the evidence is

12

sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version." *Id.* (internal citations omitted). Applying the same standard used by the District Court, we must "draw all reasonable inferences in favor of the nonmoving party" and we "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). In reviewing the record as a whole, we must "disregard all evidence favorable to the moving party that the jury is not required to believe" and "give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Id.* at 151 (internal quotations omitted).

"We review the district court's order ruling on a motion for a new trial for abuse of discretion unless the court's denial is based on the application of a legal precept, in which case the standard of review is plenary." *Lightning Lube*, 4 F.3d at 1167.

## A. Motion for Judgment as a Matter of Law

If there is no direct evidence of age discrimination, as in this case, a plaintiff may prove age discrimination through the use of circumstantial evidence. In order to establish a prima facie case of age discrimination, a plaintiff must show that he: "(1) is over 40; (2) is qualified for the position in question; (3) suffered an adverse employment decision; and (4) was replaced by a sufficiently younger person to permit an inference of age discrimination." *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 330 (3d Cir.

13

1995).  If the plaintiff establishes these four elements, this creates a presumption of age discrimination, which the employer can rebut by providing a legitimate, nondiscriminatory reason for the adverse employment decision.  *Id.*  If the employer has met its burden to offer a legitimate, nondiscriminatory reason for the decision, the burden shifts back to the plaintiff to prove that the employer's stated reason is pretextual.  The plaintiff must present evidence "direct or circumstantial, from which a factfinder could reasonably either: (1) disbelieve the employer's articulated legitimate reason; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.  The factfinder may infer from the combination of the plaintiff's *prima facie* case, as well as its own rejection of the employer's proffered nondiscriminatory reason, that the employer unlawfully discriminated against the plaintiff and was merely trying to conceal its illegal act with the articulated reason."  *Id*. at 331 (internal citation omitted).

In this case, the parties did not dispute that Steward had proved the first three elements of his prima facie case.  Accordingly, the members of the jury were instructed that they only had to determine whether Steward proved the fourth element of his prima facie case: that "someone substantially younger assumed plaintiff's duties or was treated more favorably."  App. 1746.  If so, then they were to move on to consider Sear's stated non-discriminatory reasons for terminating Steward and whether plaintiff proved that the stated reasons were pretextual.  *Id.* at 1747-48.  The District Court granted Sears' motion for judgment as a matter of law on the grounds that Steward failed to establish a prima

14

facie case of age discrimination and, even if he had established a prima facie case, he failed to present sufficient evidence to allow a jury to find that Sears' stated nondiscriminatory reasons for the termination were pretextual.

### 1. Sufficient Evidence to Raise Inference of Discriminatory Intent

After a jury verdict has been rendered, we do not review whether the plaintiff introduced sufficient evidence to establish a prima facie case of discrimination. *See Bruno v. W.B. Saunders Co.*, 882 F.2d 760, 764 (3d Cir. 1989) ("Where the defendant has done everything that would be required of him if the plaintiff had made out a prima facie case, whether the plaintiff really did so is no longer relevant." (quoting *U.S. Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983)). Rather, we consider whether there is sufficient evidence to support the jury's ultimate conclusion that age was a determinative factor in Steward's termination. *Id.* However, our inquiry into whether the evidence is sufficient to support the jury's verdict does not differ markedly from first inquiring into whether the plaintiff submitted evidence sufficient to establish the elements of a prima facie case and then into whether he sustained his burden of proving that his employer's reasons were a mere pretext. *See id.* at 764 n.2 ("Although we do not address this contention in terms of the *prima facie* case, it may be that our inquiry into the sufficiency of the evidence to support . . . an inference [of discrimination] will not differ markedly from an inquiry into whether the plaintiff has introduced evidence sufficient to establish one of the elements essential to her *prima facie* case." (citations omitted)).

15

The District Court concluded that Steward failed to establish the fourth element of a prima facie case of age discrimination and that, therefore, the evidence presented could not support the jury's ultimate conclusion that Sears' decision to terminate Steward was discriminatory. *See id.* at 764. The Court considered the sufficiency of Steward's evidence to establish the fourth element of his claim, namely, that "someone sufficiently younger assumed his duties or was treated more favorably so as to create an inference of age discrimination." *Steward*, 2006 WL 1648979, at *12. The Court concluded that the jury could find that Steward's duties were assumed by the three remaining Technical Managers, Carter (45), Merkel (35) and Sipple (60), with some assistance from DeWit (33). *Id.* at *14. The average age of these four comparators at the time Steward was terminated was 43.25 years old, or 6.75 years younger than Steward. The Court concluded that the 6.75 year average age difference between Steward and the comparators was insufficient to establish a prima facie case of age discrimination because the comparators were not "sufficiently younger" than Steward to permit an inference of discrimination. *Id.* at *15.

None of our prior decisions squarely address whether a 6.75 year average age difference between a plaintiff and those who assume his job duties is sufficiently large to give rise to an inference of age discrimination. *See Barber v. CSX Distrib. Servs.,* 68 F.3d 694, 699 (3d Cir. 1995) (eight year difference between plaintiff and comparator could support a finding that the comparator was "sufficiently younger" than the plaintiff to permit an inference of age discrimination); *Sempier v. Johnson & Higgins*, 45 F.3d 724,

16

729-30 (3d Cir. 1995) (concluding that the combined difference in age between plaintiff and four-years-younger and ten-years-younger coworkers was clearly sufficient to satisfy the fourth prong of a prima facie case by raising an inference of age discrimination). *But see Narin v. Lower Merion Sch. Dist.*, 206 F.3d 323, 333 n.9 (3d Cir. 2000) (holding that plaintiff could not succeed because she failed to proffer evidence that the employer's stated reasons were pretextual and adding in a footnote that plaintiff also failed to establish a prima facie case of discrimination because replacement employees, aged 49 and 54, were not sufficiently younger than 56-year-old plaintiff to permit an inference of discrimination); *Bernard v. Beth Energy Mines*, 837 F. Supp. 714 (E.D. Pa. 1993) (concluding that neither applicant hired for the position at issue, who were 47 years old and 50 years 6 months old respectively, were significantly younger than plaintiff, who was 54), *aff'd without opinion*, 31 F.3d 1170 (3d Cir. 1994).

We decline to adopt a brightline rule that a 6.75 year average age difference between a plaintiff and those who assume his job duties is, as a matter of law, insufficient to give rise to an inference of age discrimination. Viewing the evidence in the light most favorable to Steward, we must consider not only the average age of those who assumed Steward's job duties, but also the age of each individual coworker who took over some portion of Steward's duties, as well as what portion of Steward's duties each assumed. Here, two of the Sears employees who assumed Steward's job duties – DeWit (33) and Merkel (35) – were each fifteen or more years younger than Steward. Moreover, DeWit was working in the same location as Steward at the time of Steward's termination and

17

ultimately assumed the title of Technical Manager at the Wilmington facility. Furthermore, DeWit, as well as Carter, took over the supervision of some of the technicians that Steward used to supervise after Steward was terminated. Of those who assumed Steward's job duties, only Sipple (60) was older than Steward, and she did not work at the same facility as Steward, nor did either side offer any evidence as to which of Steward's duties Sipple assumed. The jury could have inferred from the evidence presented that DeWit and Carter, who were located in Wilmington and who both testified to taking over supervision of some of Steward's technicians, assumed a greater portion of Steward's duties than Merkel and Sipple, who were located in Reading and Dover. The jury could have viewed DeWit and Carter as the primary replacements for Steward, and could have placed greater weight on the evidence of the age difference between Steward and DeWit and between Steward and Carter than on the average age difference between Steward and the four replacements. Thus, the District Court erred in deciding whether to overturn the jury's verdict by categorically measuring the age difference between Steward and his replacements as 6.75 years. We conclude that, based on all the evidence, the jury could have found that Steward established the fourth element of a prima facie case of age discrimination.[5]

---

[5]Since we find that this evidence is sufficient to establish a prima facie case of age discrimination, we need not also consider whether the evidence that other similarly situated employees, who were significantly younger than Steward were treated more favorably than Steward, was also sufficient to establish the fourth element of Steward's prima facie case.

However, Sears also presented evidence that its decision to terminate Steward was based on nondiscriminatory reasons. We must therefore consider whether the evidence presented by Steward was sufficient to allow a reasonable jury to disbelieve Sears' stated nondiscriminatory reasons for Steward's termination, or otherwise believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of Sears' action.

## 2. Evidence that the Stated Reasons Are Pretextual

Sears presented evidence that it terminated Steward's employment for three legitimate, nondiscriminatory reasons: Steward's failure to timely complete assigned tasks, his failure to respond to customer complaints, and his failure to be properly involved in "multiple repair attempts." Steward had the burden to present sufficient evidence from which a factfinder could reasonably either disbelieve the employer's articulated legitimate reason or believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. *Brewer*, 72 F.3d at 331. Steward had to show that the employer's stated reasons were not merely wrong or mistaken, but rather he had to "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'" *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994).

When the employer relies on particular criticisms as a reason for the adverse

19

action, "the issue is not whether the [] criticisms of [the plaintiff] were substantiated or valid . . . . [T]he question is whether [the employer] believed those criticisms to be accurate and actually relied upon them." *Id.* at 766-67. "Pretext is not established by virtue of the fact that an employee has received some favorable comments in some categories or has, in the past, received some good evaluations." *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 528 (3d Cir. 1992). A plaintiff does not establish pretext by pointing to commendation of the plaintiff in categories the defendant says it did not rely upon in making the employment decision at issue. *Id.* at 531. Rather, the factfinder must consider the employee's performance in the categories that the employer deemed relevant to the employment decision. *See id.* A plaintiff is not required to "cast doubt on each proffered reason in a vacuum. If the defendant proffers a bagful of legitimate reasons, and the plaintiff manages to cast substantial doubt on a fair number of them, the plaintiff may not need to discredit the remainder. That is because the factfinder's rejection of some of the defendant's proffered reasons may impede the employer's credibility seriously enough so that a factfinder may rationally disbelieve the remaining proffered reasons, even if no evidence undermining those remaining rationales in particular is available." *Fuentes,* 32 F.3d at 764 n.7.

We conclude that, viewing the evidence in the light most favorable to Steward, a jury could reasonably either disbelieve the Sears' articulated legitimate reasons for terminating Steward or otherwise believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of Sears' action. Steward

20

presented sufficient evidence of the weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in some of Sears' stated reasons for terminating Steward that a reasonable factfinder could rationally have found these reasons "unworthy of credence" and instead concluded that Steward's age was more likely than not a motivating or determinative cause of the termination.

### a. Schweizer's Remark

In addition to presenting evidence to cast doubt on the three specific reasons given by Sears for his termination, Steward also presented evidence of Schweizer's age-based bias against him. Steward testified that Schweizer made an age-based comment to him in May 2001, in response to Steward's voicing concerns about the additional responsibilities given to the Technical Managers at that time. Schweizer said to Steward, "Hell, you are old enough, you have been around long enough, you should handle this." App. 519. The District Court concluded that the comment did not clearly show an age bias. "The age comment, rather than exhibiting a bias against plaintiff because of his age, expressed Schweizer's opinion that plaintiff could perform the extra work assigned because of his experience. Any other inference regarding that statement is unreasonable." *Steward*, 2006 WL 1648979, at *29.

We disagree and conclude that a reasonable factfinder could infer from this remark that Schweizer was biased against Steward because of his age. The remark reflects Schweizer's awareness of Steward's age, not merely his "experience" or time with the company. The jury could have inferred from this evidence that Schweizer was more

21

impatient with Steward because of Steward's age and held him to a different standard than his coworkers because of his age.[6]

The District Court also concluded that this remark was not probative of Sears' motivation in terminating Steward because it was not made in connection with Steward's termination. *Id.* at \*26-27. However, remarks made by supervisors directly involved in the termination decision at issue can be evidence of their discriminatory animus, even if the remarks were not made in connection with the termination decision. *Cf. Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 528 (3d Cir. 1992) (comments by partner who did not participate in promotion decision, made five years before failure to promote plaintiff, were not probative).

**b. Failure to timely complete assigned tasks**

In addition to the evidence of Schweizer's age-based bias against Steward, Steward also presented evidence to cast doubt on Sears's claim that it terminated Steward because he failed to complete assigned tasks in a timely manner. Specifically, Steward failed to clean the tractor yard by June 4 and he failed to submit the vacation records to Schweizer on time. Steward does not dispute that he did not complete either of these tasks by the deadline provided to him. However, Steward testified that he warned Schweizer by email in advance of the June 4 deadline that he was concerned that he

---

[6] For all we know, the jury may have developed an unfavorable opinion of Schweizer, who was an important witness for Sears. We have no way of knowing what his demeanor on the stand may have been. The jury may have discredited Schweizer's testimony and credited Steward's.

would not complete the yard clean-up by June 4. He also noted in his comments on the PPI that "[a]s stated in the e-mail I sent you, I will try to have the tractor yard finished by the June 4 deadline. I am short of help. One tech is off with surgery and the other can't work overtime." App. 531. Notably, Schweizer did not mention this "heads up" in Steward's termination notice but, to the contrary, stated in the termination notice that "Steward failed to ... keep me informed or request an extended deadline." App. 1844. As for the vacation records, Steward testified that Schweizer made no comment to him when Steward handed him the vacation records in February and did not inform Steward that he was bothered by the delay in receiving these records until he noted it for the first time in the initial PPI. In addition, Steward presented a productivity report for 2000, which showed that 88% of the time Steward's technicians performed and completed the required service within a week. According to this report, Steward had the highest rating in this area out of all of the Technical Managers.

Sears also presented evidence that it terminated Steward because he failed to address the backlog of lawn mowers waiting to be repaired in Wilmington. Steward testified that these repairs could not be completed in a timely manner because of the lack of the appropriate parts. Schweizer testified that he was aware of the parts shortage and that the mowers could not be repaired because of the parts shortage. Sears argued that the lack of spare parts was attributable to Steward's improper handling of the PDC Sweep. However, Steward testified that he was not properly informed about how he was supposed to conduct the PDC Sweep and that he was told by another Sears employee

23

named Howell to sweep the required lawn mower parts. *See Sorba v. Pa. Drilling Co.*, 821 F.2d 200, 205 (3d Cir. 1987) (concluding that jury could find the proffered reason for the termination unworthy of belief if plaintiff, who was allegedly terminated because his supervisors were dissatisfied with his work on his last three jobs, could present evidence that his supervisors realized that the poor results were not his fault). Carter also testified that there is always a backlog of mowers in the facility around the spring lawn and garden season. App. 1275 ("That [2001] was probably about the worst one [backlog], but, I mean, it always - we get lawn mower season and we get maybe two, three law mowers one day, you get 70 the next day. Everybody is bringing them in, especially on the nice day, and normally it's towards the end of the week on Fridays and Saturdays. You come in on Monday morning and you can't even open the door because lawn mowers are there and that's normally on Mondays....").

### c. Failure to respond to customer complaints

Steward also presented evidence to cast doubt on Sears' claim that Steward was terminated because he failed to respond to customer complaints. In the various PPIs, Schweizer listed several customers that Steward had not properly handled, namely, customers Montana, Stagg, Givens, Rodel and Gaglia. However, Steward presented evidence that these customers were ultimately satisfied and that he had received praise from several customers and had received a rating of "3" for customer service in 2001. Steward also noted that the five identified customers with complaints were only a handful out of the 17,000 customers that his technicians serviced in 2001. Carter testified that

24

"we all had been in situations like" Steward's. App. 1273 ("I think we all had been in situations like that [being criticized for handling of customer complaints], because once it gets to the [District Service Manager] there's time where they say that you didn't handle it, but it's always, if you really look at it, it's always a breakdown somewhere where a call-taker might not have got all the information that you needed to take care of that problem."). Carter's general impression of Steward's interaction with customers was that "he did a great job with customers, if I had to say so myself, I think he did a great job with them." App. 1299. Steward also pointed out the lack of documentary evidence to support Sears' contention that Steward was not returning customer calls.

### d. Failure to be properly involved in "multiple repair attempts"

Steward also presented evidence to cast doubt on Sears' claim that it terminated Steward because he was not properly involved in "multiple repair attempts." In the initial PPI, Schweizer informed Steward that he expected Steward to be more involved when a technician returned to the same customer's home multiple times in order to perform the required service. However, Steward testified that it was not true that he was not providing input to his technicians on multiple repair attempts. He testified that he "used to routinely check multiple attempts to see what was going on" and that he "would monitor the multiple attempts to see why, what was the cause of it, if it was a routing issue, if it was a parts issue, if it was a tool issue." App. 469-70. He stated that he provided feedback to his technicians "all the time." App. 470. Carter agreed that Steward was "an excellent motivator" and that the technicians felt that Steward cared

25

about them. App. 1298. Steward testified that he was not shown any documentation, such as a multiple attempt report, that supported Schweizer's contention that Steward was not actively involved in multiple repair attempts. App. 463.

### 3. Sufficiency of the Steward's Evidence

Sears contends that, even if we conclude that Steward established a prima facie case of age discrimination and presented sufficient evidence to rebut Sears' stated reasons for terminating Steward, we should nonetheless affirm the order granting judgment as a matter of law on the ground that Steward's weak prima facie case plus the weak evidence casting doubt on Sears' stated reasons for the termination is insufficient to prove, by a preponderance of the evidence, that Sears terminated Steward based on his age. *See Alvarez-Fonseca v. Pepsi Cola of Puerto Rico Bottling Co.*, 152 F.3d 17, 25-26 (1st Cir. 1998). We disagree. Based on the record before them, the members of the jury could have concluded that it was more likely than not that Sears terminated Steward based on his age. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993) ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination."). We will therefore reverse the District Court's order granting judgment as a matter of law in favor of Sears.

### B. Motion for a New Trial

After granting Sears' motion for judgment as a matter of law, the District Court also granted Sears' motion for a new trial. We may affirm a district court's grant of a

new trial on the grounds that the verdict was against the great weight of the evidence, even if we reverse the order granting judgment as matter of law to the non-prevailing party. *See Roebuck v. Drexel Univ.*, 852 F.2d 715, 737 (3d Cir. 1988) (reversing order granting judgment as a matter of law, but affirming order granting a new trial). "Deferential review is appropriate when considering whether a verdict is against the weight of the evidence because the district court was able to observe the witnesses and follow the trial in a way that we cannot replicate by reviewing a cold record." *Greenleaf v. Garlock, Inc*., 174 F.3d 352, 366 (3d Cir. 1999) (internal quotations omitted). However, "[n]ew trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Id.*

Although our review of the District Court's order is deferential, we conclude that the District Court erred in granting Sears' motion for a new trial. The District Court's decision to grant the motion for a new trial was based on the same perceived deficiencies in Steward's case that caused the Court to grant Sears' motion for judgment as a matter of law. As we have explained, we disagree with the District Court's conclusion that the evidence presented by Steward was insufficient to allow a jury to return a verdict in his favor. Because we do not believe that the evidence in favor of Sears was so overwhelming that the verdict in favor of Steward shocks the conscience, we conclude that the District Court's grant of Sears' motion for a new trial was an abuse of discretion.

27

We will therefore reverse the District Court's order granting Sears' motion for a new trial.

## III.

Accordingly, for the reasons set forth, we will reverse the District Court's order granting judgment as a matter of law in favor of Sears and, in the alternative, granting Sears' motion for a new trial.