**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4703
_____

CHRISTOPHER PROUDFOOT,
Appellant

v.

ARNOLD LOGISTICS, LLC.
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. No. 1:13-cv-01650)
District Judge: Hon. Christopher C. Conner
_____

Submitted Under Third Circuit LAR 34.1(a)
October 8, 2015
_____

Before: SHWARTZ, KRAUSE, and COWEN, Circuit Judges.

(Filed: October 8, 2015)

_____

OPINION*
_____

SHWARTZ, Circuit Judge.

---

      * This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Christopher Proudfoot appeals from the District Court's order granting summary judgment in favor of Arnold Logistics, LLC ("Arnold") on his discrimination and retaliation claims under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. ("ADA"). For the following reasons, we will affirm.

I

Proudfoot has a learning disability that impedes his comprehension and interpretation of body language, and he suffers from adult separation anxiety disorder. Beginning in June 2011, Proudfoot worked for Arnold as a sanitation laborer at an industrial complex in Mechanicsville, Pennsylvania. Proudfoot reported to Roger Danner, warehouse manager for several buildings in the complex. Danner reported to Michael Dobbs, the complex's general manager.

Though he did not supervise Proudfoot, Dobbs constantly criticized Proudfoot's work performance. Proudfoot testified that Dobbs called him "dumbass" and "retard." App. 151a. Proudfoot told other employees, including Danner, about these comments, and they told him to stay away from Dobbs.

On February 28, 2012, Lindsey Haskins, a female employee, reported that Proudfoot approached her in a way that made her uncomfortable. Danner asked Haskins and Proudfoot to provide written statements about the incident. In his account, Proudfoot stated: "I have a learning disorder but I still do my best to learn." App. 97a, 142a. Arnold did not discipline Proudfoot.

On March 14, 2012, Jeff Cooper, Proudfoot's coworker, reported to Danner that

2

Proudfoot had threatened to harm Dobbs. Danner immediately relayed Cooper's report to Sharon Kay, the regional human resources manager. Kay instructed Danner to obtain written statements from Cooper and Proudfoot. Cooper wrote that Proudfoot said he was tired of Dobbs and threatened to harm Dobbs or have someone else do so. In his written statement, Proudfoot explained that he told Cooper that Dobbs acted unprofessionally toward him, that Dobbs was "getting on [his] nerves and . . . is not easy to talk to," and that Proudfoot was "tired of the teasing and harassment and . . . request[ed] for it to STOP!!" App. 193a. Proudfoot testified that he merely suggested to Cooper that one day someone might take Dobbs' verbal abuse the wrong way and something bad might happen to Dobbs as a result.

Kay and Danner met with Proudfoot. Kay testified that she asked Proudfoot what he meant by "the teasing and harassment." App. 278a. He said that he "gets busted" by other Arnold employees, but did not provide specifics. App. 278a. Danner testified that Proudfoot also said he "gets tired of [Dobbs] always asking [Proudfoot] about his job," App. 165a, but Proudfoot did not elaborate. Danner also testified that he "asked [Proudfoot] why he thought Mike [Dobbs] was so bad towards him. [Proudfoot] didn't know." App. 165a. Proudfoot did not contradict these accounts about the meeting and testified only that, when he met with Danner and Kay, he "wasn't able to stand up for [him]self and express anything to the extent that needed to be expressed." App. 145a.

After investigating the threats, Danner and Kay decided to terminate Proudfoot pursuant to Arnold's employee conduct policy prohibiting threats in the workplace. Both

3

Danner and Kay testified that the alleged threats formed the sole basis for Proudfoot's termination and that the Haskins incident did not factor into the decision. While Danner testified that he and Kay had equal input into the decision, Kay testified that she made the final decision after a "collaborative" process in which Kay recommended termination "[t]o Mr. Danner as well as Mr. Dobbs," and "solicit[ed] some input" from them. App. 276a.[1]

Following his termination, Proudfoot filed a complaint with the Pennsylvania Human Rights Commission ("PHRC"). Arnold told the PHRC that the threats, along with the Haskins incident, formed the basis of the termination decision. It also stated that Kay reviewed her termination decision with Danner and Dobbs, who both concurred.

Proudfoot sued Arnold, alleging that he was fired because of his disability and in retaliation for his complaint of harassment, in violation of the ADA. After discovery, Arnold moved for summary judgment. The District Court granted the motion, concluding that Proudfoot did not show that Arnold's facially neutral reason for terminating him was pretext. Proudfoot appeals.

II[2]

---

[1] There is nothing in the record setting forth Dobbs' account of his role in the termination decision.

[2] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. Our review of the grant of summary judgment is plenary. Mylan Inc. v. SmithKline Beecham Corp., 723 F.3d 413, 418 (3d Cir. 2013). We apply the same standard as the District Court, viewing facts and making reasonable inferences in the non-movant's favor. Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 266-67

4

We examine Proudfoot's ADA claims of discrimination and retaliation under the analytical framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).[3] See Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 759 (3d Cir. 2004) (retaliation); Walton v. Mental Health Ass'n of Se. Pa., 168 F.3d 661, 667-68 (3d Cir. 1999) (discrimination). Under McDonnell Douglas, a plaintiff claiming discrimination must first establish a prima facie case. Walton, 168 F.3d at 668. Second, "[o]nce the plaintiff establishes a prima facie case [of discrimination], 'the burden then . . . shift[s] to the employer to articulate some legitimate, nondiscriminatory reason for the employee's [termination].'" Iadimarco v. Runyon, 190 F.3d 151, 157 (3d Cir. 1999) (quoting McDonnell Douglas, 411 U.S. at 802). Third, if the employer meets its burden, "[t]he plaintiff then must establish by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for discrimination, and not the real motivation for the unfavorable job action." Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003) (per curiam). "[T]hroughout this burden-shifting paradigm[,] the

_____

(3d Cir. 2005). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

[3] "Because the anti-retaliation provisions of the [ADA, ADEA, and Title VII] are nearly identical . . .[,] precedent interpreting any one of these statutes is equally relevant to interpretation of the others." Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567 (3d Cir. 2002).

ultimate burden of proving intentional discrimination always rests with the plaintiff." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).

A

The parties do not dispute that Proudfoot established a prima facie case of disability discrimination and that Arnold offered a legitimate, nondiscriminatory justification for Proudfoot's termination. Thus, "[t]he sole issue of contention . . . is whether [Proudfoot] has succeeded in creating an issue of fact as to whether [Arnold's] proffered non-discriminatory reasons for [firing him] are a pretext." Kautz v. Met-Pro Corp., 412 F.3d 463, 466-67 (3d Cir. 2005).

To show pretext, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."[4] Burton v. Teleflex Inc., 707 F.3d 417, 427 (3d Cir. 2013) (internal quotation marks omitted). When a plaintiff challenges the "credibility of the employer's proffered justification," he must produce evidence "demonstrat[ing] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally

_____

[4] The first prong involves an indirect showing of pretext, while the second prong involves a direct showing. See Josey v. Hollingsworth Corp., 996 F.2d 632, 638 (3d Cir. 1993). On appeal, Proudfoot only attempts to show pretext under the first prong, and asserts that the District Court erred in failing to discredit Arnold's proffered justification.

6

find them unworthy of credence." Id. (internal quotation marks omitted). The plaintiff "must show[] not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1109 (3d Cir. 1997) (en banc).

Here, Proudfoot argues that Arnold's proffered reason for firing him is pretextual because Arnold has inconsistently (1) identified the individuals who decided to terminate him; and (2) justified his termination. Opening Br. 22. These arguments are unavailing. First, slight inconsistencies as to who made the ultimate decision to terminate Proudfoot do not demonstrate that the reason provided for his termination was pretextual. Although Kay testified that she solicited some input from Dobbs and Danner before making a decision about how to proceed, it was Kay who recommended termination to Dobbs and Danner. Kay did so only after she and Danner investigated the threats. That investigation produced confirmation from Cooper that Proudfoot had threatened to harm Dobbs or have someone else do so, and Proudfoot also acknowledged in his own testimony that he suggested to Cooper that something bad might happen to Dobbs as a result of Dobbs' verbal abuse. While we are troubled by the immaturity and discriminatory nature of the derogatory statements allegedly made by Dobbs to Proudfoot over the course of Proudfoot's employment, particularly given Dobbs' status as a supervisor, there is no evidence that Dobbs played any role in the investigation of the threats or that the recommendation or decision to terminate Proudfoot was based on anything other than the fruits of that investigation. Thus, the record demonstrates that

7

there is no genuine dispute in this case as to a factual basis for Arnold's alleged non-discriminatory reason for the termination.

Second, Arnold's reason for firing Proudfoot has not changed. Although Arnold also relied on the Haskins incident before the PHRC, it has consistently maintained that Proudfoot's threats against Dobbs were the reason for the termination. That Arnold offered the Haskins incident as an additional justification for its decision in an administrative proceeding does not undermine Arnold's proffered reliance on the threats as the main reason for his termination. See Simpson v. Kay Jewelers, 142 F.3d 639, 649 n.15 (3d Cir. 1998) (citing McCoy v. WGN Cont'l Broad. Co., 957 F.2d 368, 374 (7th Cir. 1992) (declining to bind defendants to "positions they initially assert in state administrative proceedings by rendering any different position a per se pretext")).

Proudfoot has thus failed to show that a reasonable juror would find Arnold's reason for firing him to be "so plainly wrong," Keller, 130 F.3d at 1109, that it is "unworthy of credence," Fuentes, 32 F.3d at 765 (internal quotation marks omitted). Therefore, we will affirm the order granting Arnold summary judgment on Proudfoot's discrimination claim.

B

Proudfoot's ADA retaliation claim also fails. Under McDonnell Douglas, the plaintiff must first establish a prima facie case of retaliation. If the plaintiff makes out a prima facie case, the burden shifts to the defendant to proffer a legitimate, non-retaliatory justification for the adverse employment action. See Shellenberger v. Summit Bancorp,

8

Inc., 318 F.3d 183, 187 (3d Cir. 2003). "If the employer satisfies that burden, the plaintiff must then prove that 'retaliatory animus played a role in the employer's decisionmaking process and that it had a determinative effect on the outcome of that process.'" Id. (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 501 (3d Cir. 1997)).

The parties do not dispute that Proudfoot made out a prima facie case of retaliation and that Arnold raised a legitimate, non-retaliatory reason for the termination. Thus, the sole issue is whether Arnold's justification for terminating Proudfoot was pretext for retaliation.[5]

Proudfoot contends that the one-day lapse of time between his complaint of harassment and his termination shows pretext. Temporal proximity is a factor that can be used to establish the third element of a plaintiff's prima facie case of retaliation as well as to discredit an employer's justification at the third step of the McDonnell Douglas analysis. See Jalil v. Avdel Corp., 873 F.2d 701, 709 & n.6 (3d Cir. 1989). However, "the timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive before a causal link will be inferred." Jones v. Se. Pa. Transp. Auth., —— F.3d –––, 2015 WL 4746391, at *8 (3d Cir. Aug. 12, 2015) (internal quotation marks omitted).

---

[5] Arnold contends that Proudfoot fails to show pretext under both the traditional McDonnell Douglas analysis for retaliation claims and the "but for" causation standard applied to Title VII retaliation claims. Univ. of Tex. Sw. Med. Ctr. v. Nassar, —— U.S. ––––, 133 S. Ct. 2517, 2534 (2013). Appellee Br. 18-20. We have not yet decided whether Nassar's "but for" causation standard also applies to retaliation claims under the ADA, and need not do so here because Proudfoot fails to make the requisite showing under the traditional and less onerous causation requirement of McDonnell Douglas.

Thus, temporal proximity may be sufficient to show pretext "[i]n certain narrow circumstances" based on the particular facts and stage of a case. Marra v. Phila. Hous. Auth., 497 F.3d 286, 302 (3d Cir. 2007); Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279-80 & n.5 (3d Cir. 2000).

The one-day lapse between Proudfoot's complaint and termination here does not discredit Arnold's proffered justification for terminating him. After Cooper reported Proudfoot's threats to Danner, Danner asked Cooper and Proudfoot to submit written statements. Only after Arnold informed Proudfoot that it was investigating the threats did Proudfoot complain of harassment. "[A]n employee may not insulate [himself] from termination by covering [himself] with the cloak of Title VII's opposition protections after committing non-protected conduct that was the basis for the decision to terminate." Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 137 (3d Cir. 2006). Moreover, Arnold had a written policy notifying employees that threats in the workplace could result in termination. Threats of workplace violence are serious, and no reasonable juror would conclude that Arnold acted inappropriately in quickly considering termination following its investigation. Indeed, the sequence here "is no evidence whatever of causality." Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 272 (2001) (analyzing third element of prima facie case). On this record, therefore, the temporal proximity between Proudfoot's complaint about harassment and his termination would not provide a reasonable juror a basis to conclude that the timing is unusually suggestive of retaliatory animus, and we will affirm the order granting summary judgment to Arnold

10

on Proudfoot's retaliation claim.

## III

For the foregoing reasons, we will affirm the order of the District Court granting summary judgment for Arnold.