NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3627
_____

RICHARD BEESE,

Appellant

v.

MERIDIAN HEALTH SYSTEMS, INC.; OCEAN MEDICAL GROUP;
DEBRA MEDLER; MARYBETH KADY

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 3-11-cv-07505)
District Judge: Honorable Freda L. Wolfson
_____

Submitted Under Third Circuit LAR 34.1(a)
October 7, 2015

Before: McKEE, Chief Judge, AMBRO, and HARDIMAN, Circuit Judges

(Opinion filed: November 2, 2015)
_____

OPINION[*]
_____

AMBRO, Circuit Judge

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Richard Beese claims that Meridian Health Systems, Inc., Ocean Medical Center, Debra Medler, and Mary Beth Kady (the "Appellees") terminated his employment at Meridian in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2909 *et seq.*, and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 *et seq.* Beese appeals the District Court's order granting summary judgment to the Appellees and denying his motion for partial summary judgment. For the reasons that follow, we affirm.

I.

From 2008 to 2010, Beese worked for Meridian as a radiology technician at the Ocean Care Center, the Ocean Medical Center's 24-hour satellite emergency room. As a Meridian employee and a member of Meridian's Nursing Department, Beese was subject to Meridian's Guidelines for Cooperation and Discipline Policy (the "Discipline Policy"), as well as the Nursing Department's Notification of Absence/Cancellation OMC Nursing Administration Policy & Procedure (the "Absence Policy").

The Discipline Policy identifies 22 workplace violations as Level I infractions, including failure to perform duties as assigned, excessive absenteeism, and failure to comply with departmental notification requirements in cases of unauthorized absences. Under the Discipline Policy, Meridian will fire employees after they commit four Level I infractions, provided that each of the last three infractions occurs within 12 months of a prior Level I infraction. Thus, if an employee commits a second Level I infraction within 12 months of receiving his or her first warning as a result of a Level I infraction, the employee receives a second warning; if an employee commits a third Level I infraction

2

within 12 months of receiving his or her second warning, the employee receives a third warning; and if an employee commits a fourth Level I infraction within 12 months of receiving his or her third warning, the employee is fired. If an employee who has not received a warning in the previous 12 months commits a Level I infraction, then the Discipline Policy grants his or her supervisor the discretion not to issue a warning. But if an employee commits a Level I infraction within 12 months of a warning, except under limited circumstances not present in this case (see below), the Discipline Policy does not grant supervisors the discretion to forgo issuing a warning.

The Absence Policy provides that "[a]ll nursing team members who are . . . calling in sick . . . are required to notify the Nursing Supervisor and/or their Nurse Leader," and that "[t]o be eligible for [paid time off] benefits, any team member who is absent due to illness or injury must notify their [sic] manager and or Nursing Supervisor at least two hours before the start of his/her regularly scheduled work day" (App. A162). The Absence Policy further states, "Team members will follow the call-out/cancellation process when requesting unplanned [paid time off]." *Id.* Kady, Ocean Medical Center's Manager of Emergency Services, testified that she always treated a failure to satisfy the two-hour notification requirement as a Level I infraction.

Beese was scheduled to work the evening shift on March 15, 2010. Approximately two hours before the start of his shift, and within 12 months of his second warning pursuant to the Discipline Policy, Beese decided that he wanted to call out from his shift so that he could seek medical attention for certain symptoms he had begun to experience a few days earlier. Although Beese admits he was "ready to come into work"

3

that evening (App. A78), he asked a coworker to cover his shift, and approximately one hour later that coworker agreed to do so. As a result, approximately one hour before his evening shift began, Beese told the on-duty radiology technician that he would not report for work. Beese did not inform Kady or his supervisor, Medler, that he was not coming to work.

As a result of Beese's March 15 absence, Kady issued Beese a third warning (the "Final Warning"). Kady cited two separate Level I infractions as grounds for the discipline: (1) excessive absenteeism, and (2) failure to provide adequate notice of an unscheduled absence. Some of the absences that formed the basis for the "excessive absenteeism" infraction were protected under the FMLA and the NJLAD.

Approximately five months after Beese received the Final Warning, Beese was tasked with performing an abdominal/pelvic computerized tomography ("CT") scan, both with and without oral and intravenous contrast. Beese had not previously performed those scans together, so Medler provided a step-by-step instruction on how to perform them. The scans returned sub-standard images, and the parties dispute why that happened: Medler concluded that human error was to blame, while Beese claims that the scanner's contrast injector malfunctioned, forcing him to "scramble to salvage" the images. (App. A247.)

About a week after the sub-standard scan, Beese went out on an FMLA-protected leave of absence. Six days into that leave of absence, Medler faxed an undated, handwritten account of the incident involving the sub-standard scan. Soon thereafter, Medler recommended that Beese's conduct be treated a Level I infraction and the

decision was made to issue Beese his fourth disciplinary notice. After the conclusion of Beese's leave of absence, Kady issued the notice and terminated Beese's employment.

Beese then began this litigation, and after the close of discovery, the District Court denied his motion for partial summary judgment and granted Appellees' motion for summary judgment. This appeal followed.

## II.

We review the District Court's grant of summary judgment *de novo*. *Lichtenstein v. UPMC*, 691 F.3d 294, 300 (3d Cir. 2012). Summary judgment should only be granted if "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). A dispute is genuine if a reasonable trier of fact could find in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is material if it could affect the outcome of the case. *Id.* In considering the record, we must draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.

Beese first claims that the Appellees are liable for FMLA and NJLAD retaliation because they issued the Final Warning in retaliation for Beese's taking protected leave. To prevail on either of those claims, Beese must prove (among other things) that he suffered an adverse action because he took protected leave. *See Lichtenstein*, 691 F.3d at 301-02. (FMLA retaliation); *Victor v. State*, 4 A.3d 126, 141 (N.J. 2010) (NJLAD retaliation). The District Court held that the undisputed evidence in the record demonstrates that Beese committed a Level I infraction by violating the call-out

5

procedures and that the Discipline Policy required his supervisors to issue the Final Warning as a result of that infraction. Thus, notwithstanding that the Final Warning improperly cited protected absences as an alternative basis for the discipline, Beese's supervisors would have issued the Final Warning even if they had not considered the protected absences, and Beese presented no evidence from which a reasonable jury could find that he received the Final Warning because of his protected leave.[1]

We agree with the District Court's analysis. Under the plain meaning of the Discipline and Absence Policies, Beese was required to notify specific supervisors of his absence at least two hours before his shift. It is undisputed that he did not give timely notice to the appropriate supervisors. He argues that the Absence Policy does not provide that the failure to give timely notice is a Level I infraction, but Kady's uncontroverted testimony was that she always treated untimely call-outs as Level I infractions. Beese also argues that he was told to arrange coverage for any shifts that he would miss, but such an instruction does not do away with the independent obligation imposed by Meridian's call-out procedures to give timely notice of unscheduled absences.

The undisputed evidence further demonstrates that Beese's supervisors were required to issue the Final Warning as a result of Beese's infraction. The text of the Discipline Policy, along with the testimony of Kady and Meridian's Director of Human

---

[1] The parties dispute whether Beese's FMLA claim should be analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), or the mixed-motive framework set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 276-77 (1989) (O'Connor, J., concurring). Because the undisputed evidence in the record would produce the same result under either framework, we need not decide that issue.

Resources, Margaret Frucci, establishes that (1) supervisors had discretion not to issue a warning when the employee received no warnings in the prior 12 months (*see* App. A137-38), and (2) supervisors had discretion not to issue a warning in cases of emergency that arise less than two hours before the employee's shift, a circumstance not present in this case (*see* App. A92, A140-41, A263-64). Beese does not point to any evidence suggesting that his supervisors had discretion not to issue the Final Warning. Thus, for purposes of summary judgment, it is undisputed that Beese would have received the Final Warning even if his supervisors had not considered his protected leave, and the Appellees are entitled to summary judgment on the FMLA and NJLAD retaliation claims.

Beese also claims that the Appellees are liable for FMLA and NJLAD retaliation because they issued his fourth disciplinary notice—the notice that precipitated his firing—in retaliation for Beese taking protected leave and their justification for that discipline is pretext.[2] The parties dispute whether the sub-standard CT scan justified a fourth disciplinary notice, and the District Court erred to the extent it concluded otherwise. (*See* App. A22 n.19.) However, the Appellees are entitled to summary judgment because there is insufficient evidence in the record that Beese was fired in retaliation for taking protected leave. "To demonstrate a causal connection, a plaintiff generally must show 'either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism,

---

[2] For purposes of this appeal, we will assume that this claim should be analyzed under the *McDonnell-Douglas* burden-shifting framework.

7

coupled with timing[,] to establish a causal link." *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 258 (3d Cir. 2014) (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)). Beese's evidence of a causal connection consists of (1) an internal Meridian email to Kady about Beese from late September 2010 stating that "[t]he FMLA dates may work in your favor" (App. A293), (2) Beese's testimony that he informed Medler in late September 2010 of his need to miss work for a doctor's appointment, and she said, "Richard, there's always something happening with you" (App. A245-46), and (3) that he was fired immediately upon his return from FMLA leave. This evidence is insufficient proof of causation. First, the reference to the "FMLA dates" in Kady's email, when viewed in its proper context, does not suggest any improper motive. Second, Medler's remark is not sufficiently suggestive of retaliatory motive to establish causation. Finally, there is no evidence of a pattern of antagonism, and it is undisputed that Meridian's policy is not to discipline employees while they are out on leave. So the timing of Beese's firing is not "unusually suggestive" of retaliation.

Beese next claims that the Appellees are liable for FMLA interference. To prevail, Beese must prove "that he was entitled to benefits under the FMLA and that he was denied them." *Sommer v. The Vanguard Grp.*, 461 F.3d 397, 399 (3d Cir. 2006). The Appellees are entitled to summary judgment because the undisputed evidence in the record demonstrates that Beese was not denied any FMLA benefits.[3] Beese received the

---

[3] The District Court suggested that Beese's FMLA interference claim should be dismissed because it is duplicative of his FMLA retaliation claim. Because summary judgment on the FMLA interference claim is appropriate notwithstanding its similarity to

8

Final Warning because he failed to comply with Meridian's call-out procedures, which were neutral workplace rules that did not implicate his FMLA rights. There is no evidence to suggest that the Final Warning denied Beese his FMLA rights.

Nor is there evidence to suggest that the Appellees failed to accommodate Beese's medical condition in violation of the NJLAD. To succeed on this theory of NJLAD liability, Beese must prove (among other things) that he requested an accommodation for his medical condition, that the Appellees failed to provide reasonable accommodations, and that he suffered an adverse employment action because of his medical condition. *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 150 (3d Cir. 2004) (quoting *Bosshard v. Hackensack Univ. Med. Ctr.*, 783 A.2d 731, 739 (2001)); *Tynan v. Vicinage 13 of Superior Court*, 798 A.2d 648, 657 (N.J. Super. Ct. App. Div. 2002) (quoting *Jones v. United Parcel Serv.*, 214 F.3d 402, 408 (3d Cir. 2000)). There is no evidence in the record that Beese ever requested an accommodation or needed an accommodation to comply with Meridian's call-out policy. Indeed, Beese testified that he was ready to go to work on March 15 and that his condition did not interfere with his ability to give timely notice of his absence. Additionally, there is no evidence in the record that the Appellees failed to accommodate Beese by issuing the Final Warning *as a result* of his condition. For the reasons stated above, Beese would have received the Final Warning even if his supervisors had not considered his condition. Hence the necessary causal relationship is absent.

---

the FMLA retaliation claim, we need not decide whether and under what circumstances duplicative FMLA claims may be dismissed simply because they are duplicative.

9

*    *    *    *    *

We have considered Beese's remaining arguments and find them unpersuasive. The District Court properly entered summary judgment in favor of the Appellees. Thus, we affirm.