**Louis DECICCO, Plaintiff,**

**v.**

**MID–ATLANTIC HEALTHCARE, LLC, Defendant.**

**CIVIL ACTION No. 14–2933**

United States District Court, E.D. Pennsylvania.

Filed 07/27/2017

Frederick M. Walton, Melissa Lang, Harvey Pennington Ltd., Philadelphia, PA, for Plaintiff.

Christopher A. Tinari, Jared Pickell, Laurel G. Grbach, Margolis Edelstein, Philadelphia, PA, Emily E. Mahler, Margolis Edelstein, Pittsburgh, PA, for Defendant.

## MEMORANDUM OPINION

Goldberg, District Judge

This is an employment discrimination case. Plaintiff, Louis DeCicco, alleges that Defendant, Mid–Atlantic Healthcare, LLC, terminated his employment in violation of

the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 et seq. Presently before me is Mid–Atlantic's motion for summary judgment. For the reasons that follow, the motion will be granted as to Plaintiff's age discrimination claims and request for punitive damages, but denied as to his FMLA claims.

## I. FACTUAL & PROCEDURAL BACKGROUND [1]

The following facts are undisputed, unless otherwise noted:

On April 18, 2011, Plaintiff began working for Maplewood Nursing and Rehabilitation Center ("Maplewood"). Maplewood provides long-term nursing care and rehabilitation services. Plaintiff was hired as the Director of Maintenance, and was responsible for, inter alia, upkeep and maintenance of the facility, maintaining contracted services, maintaining acceptable building standards, oversight of certain personnel, and coordinating with other departments during large scale renovation projects. (Def.'s Statement of Facts ("SOF") ¶¶ 1–3, 7, 11, 28–29.) [2]

On or about January 24, 2012, Plaintiff met with his direct supervisor, Sarah Balmer, who held the position of Nursing Home Administrator. The parties do not dispute that Balmer issued a "performance action plan" during this meeting, which

1. This case was consolidated with Carter v. Mid–Atlantic Healthcare, LLC (E.D. Pa. Civ. No. 14-2660) for discovery purposes. In Carter, the plaintiff alleged that Defendant Mid–Atlantic Healthcare terminated her employment in violation of the ADEA. On January 12, 2017, I granted Mid–Atlantic's motion for summary judgment. Carter v. Mid–Atl. Healthcare, LLC, 228 F.Supp.3d 495 (E.D. Pa. 2017).

2. At the time of Plaintiff's hiring, Maplewood had been owned and operated by a company called New Courtland. On July 1, 2011, Defendant Mid–Atlantic Healthcare purchased the Maplewood facility from New Courtland. (Def.'s SOF ¶¶ 7–8.)

contained an "improvement plan" setting forth certain performance goals and expectations for Plaintiff. The performance action plan documented several areas in which Plaintiff's job performance was "under review," including: not providing adequate training and mentoring to a subordinate; not resolving "longstanding issues" with Maplewood's security staff; failing to respond to facility phone calls; and, not taking a more active role in resolving the facility's maintenance issues. Plaintiff and Balmer both signed the action plan. (Def.'s SOF ¶¶ 31, 33, 37; Def.'s Ex. J.)

Around this same time (January 2012), Plaintiff began monitoring Balmer's attendance at work. During his "investigation," Plaintiff reviewed Maplewood's camera footage, Balmer's timesheets, and he prepared his own logs of Balmer's absences from the Maplewood facility. Plaintiff was not authorized to investigate Balmer's attendance. (Def.'s SOF ¶¶ 54–56; Pl.'s Dep. 177:13–20.)

On May 9, 2012, Balmer issued a second performance action plan to Plaintiff. On the same day, Plaintiff received a written warning for allegedly addressing an outside contractor in an "unprofessional manner." He also received an oral warning on this date for allegedly not keeping "adequate stock" of Maplewood's equipment, which resulted in the facility being "short one bed." (Def.'s SOF ¶¶ 37, 44; Def.'s Exs. L, M.)

On May 24, 2012, Plaintiff requested "FMLA paperwork" from Maplewood's Human Resources Director, Stephanie Massey. Plaintiff was the primary caregiver to his disabled father, and testified that he intended to use FMLA leave to care for him. Massey provided the paperwork to Plaintiff that same day. Stephanie Massey was terminated by Mid–Atlantic shortly after this interaction with Plaintiff. (Pl.'s Dep. 180:20–25; 181:1–11; 188:1–12.)

On June 15, 2012, Plaintiff met with newly-hired Human Resources Director, Caroline Eldridge. The two met for approximately two hours and discussed several issues, including: Plaintiff's performance action/improvement plans, the "fraud" involving Sarah Balmer's alleged absenteeism, and other issues such as Plaintiff's perceived lack of support from Mid–Atlantic. Plaintiff testified that he was "afraid" to turn in his completed FMLA paperwork for fear of termination, and that he advised Eldridge that he expected to be terminated. (Pl.'s Dep. 188:13–20; 204:12–25; 207:12–22; 208:1; 209:8–16.)

On June 18, 2012, Plaintiff returned his "Certification of Health Care Provider" form [i.e., his completed FMLA paperwork] to Mid–Atlantic's Human Resources department. (Pl.'s Dep. 189:11–20; Def.'s Ex. N.) According to Plaintiff, he had originally intended to turn in his paperwork to Stephanie Massey. However, by that point, she no longer worked for Mid–Atlantic. Plaintiff decided to submit his FMLA paperwork to Caroline Eldridge. When he knocked on her office door to give her the papers, he testified that Jennifer Kelly (Regional Human Resources Director) answered and indicated that she and Eldridge were in a meeting. Plaintiff claims that he handed his paperwork to Jennifer Kelly and she closed the door. (Pl.'s Dep. 188:1–12.)

Later that same evening (June 18, 2012), at 9:51 p.m., Sarah Balmer emailed John Fredericks (Regional Director of Operations) stating that she intended to terminate Plaintiff in two weeks. Balmer indicated that three other Mid–Atlantic employees, all of whom were copied on the email (including Jennifer Kelly), were "all in agreement in this decision." Balmer advised the group that she became aware Plaintiff was monitoring her attendance and hours logged at work and had been

reviewing Maplewood's security camera footage. She further stated that Plaintiff was "not the type of person" she wanted working for her, that Plaintiff had been on a performance improvement plan since January 2012 due to "HR issues," that she could not work "with someone like him and want[ed] him gone," and that his statements that Balmer "stole time" were "a lie." Balmer concluded her email by stating that "[d]ue to [Plaintiff's] deficiencies, he will be terminated in the proper fashion. I just wanted you all to know how inappropriate his behavior is." (Pl.'s Ex. S.)

On June 19, 2012, the next day, Balmer issued a "final written warning" to Plaintiff regarding his alleged failure to meet the requirements of his prior performance action plans, and placed him on yet another performance action plan, which was set to expire on July 3, 2012. (Def.'s Exs. O, P.)

On June 20, 2012, Plaintiff was terminated during a meeting conducted by John Fredericks and Jennifer Kelly. Sarah Balmer was not present during this meeting. (Def.'s Ex. R.) Plaintiff was forty-seven (47) years-old at the time of his firing. Plaintiff was replaced by a man named Robert Mitchell. The parties dispute whether Mitchell was forty-one (41) or forty-three (43) years-old at the time of his hiring.

On May 22, 2014, Plaintiff filed this lawsuit, advancing claims for age discrimination under the ADEA and PHRA (Counts I & III), as well as claims for interference and retaliation under the FMLA (Count II).

## II. LEGAL STANDARD

A party moving for summary judgment bears the initial burden of demonstrating that there are no genuine issues of material fact in dispute, and that judgment is appropriate as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once a properly supported motion for summary judgment has been made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

An issue is "genuine" if a reasonable jury could rule in favor of the non-moving party based on the evidence presented. Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). A factual dispute is "material" if it might affect the outcome of the suit under the appropriate governing law. Id. at 423. The non-moving party cannot avert summary judgment with speculation or conclusory allegations, but rather must cite to the record. Ridgewood Bd. of Educ. v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999); Fed. R. Civ. P. 56(c). On a motion for summary judgment, the court considers the evidence in the light most favorable to the non-moving party. Anderson, 477 U.S. at 256, 106 S.Ct. 2505.

## III. ANALYSIS

### A. Plaintiff's Age Discrimination Claims

The ADEA states that it shall be unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a)(1).[3] The phrase "be-

---

**3.** The United States Court of Appeals for the Third Circuit has determined that "interpretation of the PHRA is identical to that of federal anti-discrimination laws, including the ADEA," and thus the same analysis applies.

cause of" signifies that age must be more than a "motivating factor" in the employer's action and, therefore, "mixed motive" claims under Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) are unavailable. Gross v. FBL Fin. Services, Inc., 557 U.S. 167, 175–80, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009). As such, to establish a disparate-treatment claim under the ADEA, "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." Id. at 177–78, 129 S.Ct. 2343; Tomasso v. Boeing Co., 445 F.3d 702, 704–05 (3d Cir. 2006). Where, as with the case before me, a plaintiff has not produced direct evidence that age was the cause of his employer's course of action, the familiar burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) applies. Smith v. City of Allentown, 589 F.3d 684, 690–92 (3d Cir. 2009).

■ Under the McDonnell Douglas framework, an employee must first establish a prima facie case of discrimination. Burton v. Teleflex Inc., 707 F.3d 417, 426 (3d Cir. 2013). Once a plaintiff establishes his prima facie case, the burden of production then shifts to the defendant to articulate a "legitimate, non-discriminatory reason" for the adverse employment action. Id. If the employer offers a facially legitimate, non-discriminatory reason for its decision, the burden of production shifts back to the plaintiff to "provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for discrimination." Id. at 426. "At all times, however, the burden of persuasion rests with the plaintiff." Smith, 589 F.3d at 690.

### 1. Plaintiff's Prima Facie Case

■ A plaintiff establishes a prima facie case of age discrimination by demonstrat-

ing that "(1) [he] is forty years of age or older; (2) the defendant took an adverse employment action against him; (3) [he] was qualified for the position in question; and (4) [he] was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus." Burton, 707 F.3d at 426.

■ Here, Mid–Atlantic does not dispute that Plaintiff is over the age of 40, that he was qualified for the position of Director of Maintenance, or that he was subject to an adverse employment action. (Def.'s Mot. Summ. J. 5.) It is the fourth element—replacement by a "sufficiently younger" employee—that Mid–Atlantic argues Plaintiff cannot establish as a matter of law. (Id.)

With respect to what age differential will be considered sufficient as a matter of law (i.e., sufficiently younger), the United States Court of Appeals for the Third Circuit has stated that "there is no particular age difference that must be shown, but while different courts have held ... that a five year difference *can* be sufficient, ... a one year difference cannot." Showalter v. Univ. of Pittsburgh Med. Ctr., 190 F.3d 231, 236 (3d Cir. 1999) (citations omitted) (emphasis added).

Mid–Atlantic cites to Plaintiff's complaint wherein he alleges that Plaintiff's replacement, Robert Mitchell, was forty-three (43) years old when he was hired, and thus approximately four (4) years younger than Plaintiff. (Compl. ¶ 24; Def.'s Ex. A.) Mid–Atlantic then cites to multiple district court cases within the Third Circuit which acknowledge that the "sufficiently younger" element generally requires an age differential of "at least five

Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 643 (3d Cir. 2015).

years." See e.g., Reap v. Cont'l Cas. Co., 2002 WL 1498679, at *15 (D.N.J. June 28, 2002) ("Courts generally agree that satisfaction of the sufficiently younger element of a prima facie ADEA case requires proof of an age difference of at least five years."); Martin v. Healthcare Bus. Res., 2002 WL 467749, at *5 n.7 (E.D. Pa. Mar. 26, 2002) ("For purposes of a prima facie ADEA case, the fourth element contemplates an age difference of at least five years.").[4]

In response, Plaintiff argues that Mitchell was actually forty-one (41) years-old when he was hired, and cites to multiple documents that appear to reflect Mitchell's date of birth and the date he received an offer of employment from Maplewood. (Pl.'s Ex. LL, NN, MM.) Thus, Plaintiff stresses that Mitchell was in fact more than five (5) years younger than Plaintiff.

A factual dispute exists as to Mitchell's age. At this stage, when viewed in the light most favorable to Plaintiff, a reasonable jury could view the evidence presented by Plaintiff and determine that Mitchell was 41, and thus "sufficiently younger" to support an inference of a discriminatory animus.

2. Mid–Atlantic's Legitimate, Non–Discriminatory Reasons for Plaintiff's Discharge

■ The burden of production now shifts to Mid–Atlantic to articulate a facially "legitimate, non-discriminatory reason" for Plaintiff's termination. This "relatively light" burden is met "if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory

reason." Burton v. Teleflex Inc., 707 F.3d 417, 426 (3d Cir. 2013). Notably, a defendant "need not prove that the articulated reason actually motivated its conduct" at this stage. Id. Rather, "[t]he proffered reason need only raise a genuine issue of fact as to whether the employer acted impermissibly." Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 (3d Cir. 2003).

■ Mid–Atlantic asserts that Plaintiff was terminated "due to [1] his failure to meet the requirements of his performance improvement plan, [2] ongoing work performance, and [3] unprofessional conduct in working outside of the scope of his position to launch an independent investigation of his supervisor's attendance record." (Def.'s Mot. Summ. J. 13–14.)

Courts within this district have routinely accepted evidence of a plaintiff's failure to meet expected performance goals, in addition to poor work performance, as facially legitimate, non-discriminatory reasons for adverse employment decisions. See e.g., Cellucci v. RBS Citizens, N.A., 987 F.Supp.2d 578, 590 (E.D. Pa. 2013) (determining that the defendant employer met its burden by setting forth "evidence that [the plaintiff's] employment was terminated due to her ongoing performance deficiencies"); Cridland v. Kmart Corp., 929 F.Supp.2d 377, 387 (E.D. Pa. 2013) ("The Court finds [the defendant] has carried its burden [because] it has presented sufficient evidence to show it terminated [the plaintiff] based not on his age but on his continued, inadequate performance[.]"). It is also recognized that unprofessional behavior and violation of internal company policies may constitute facially legitimate,

---

4. In addition to the cases cited by Mid–Atlantic, several other decisions within this circuit have concluded that an age differential of less than five years is insufficient—as a matter of law—to establish the final element of a prima facie case of age discrimination. See e.g.,

Knox v. Fifth Third Bancorp, 2014 WL 359818, at *13 (W.D. Pa. Feb. 3, 2014); Fitzpatrick v. Nat'l Mobile Television, 364 F.Supp.2d 483, 491 (M.D. Pa. 2005); Lloyd v. City of Bethlehem, 2004 WL 540452, at *6 (E.D. Pa. Mar. 3, 2004).

non-discriminatory reasons for termination. See Kim–Foraker v. Allstate Ins. Co., 834 F.Supp.2d 267, 278 (E.D. Pa. 2011).

Here, Plaintiff does not dispute that he was placed on performance action plans in both January and May of 2012. (Def.'s SOF ¶¶ 32–33, 37; Pl.'s Resp. to Def.'s SOF ¶¶ 32–33, 37.) The record before me further reflects that Plaintiff was placed on a third performance action plan on June 19, 2012, and he received various other written and oral warnings during his employment. (See Def.'s Exs. L, M, P, O, R.) Plaintiff also does not contest that he "reviewed camera footage and Ms. Balmer's timesheets to conduct an independent investigation [into her] attendance record." (Def.'s SOF ¶ 55; Pl.'s Resp. to Def.'s SOF ¶ 55.) Nor does he dispute that he began monitoring Balmer's attendance in January 2012—the same month that he was placed on his first performance action plan. (Def.'s SOF ¶ 54; Pl.'s Resp. to Def.'s SOF ¶ 54.) Finally, his "Termination of Employment" notice states, *inter alia*, that: Plaintiff only "brought up" Balmer's alleged fraud after he himself was placed on a performance action plan; that he failed to meet the requirements of his performance action plan; and, that he worked outside the scope of his position. (Def.'s Ex. R.)

In light of the foregoing, I conclude that Mid–Atlantic has met its "relatively light" burden of producing evidence, which, if true, would permit a conclusion that it took the adverse employment action for legitimate, non-discriminatory reasons.

### 3. Pretext

The burden of production now shifts back to Plaintiff to establish, by a preponderance of the evidence, that Mid–Atlantic's proffered legitimate, non-discriminatory reasons were pretextual. Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 644–45 (3d Cir. 2015). To establish pretext, a plaintiff "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Burton, 707 F.3d at 426–27 (citing Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)). At the pretext stage, "the factual inquiry into the alleged discriminatory motives of the employer [rises] to a new level of specificity." Willis, 808 F.3d at 650.

Regarding the first method of demonstrating pretext, if a plaintiff's evidence pertains to the credibility of the employer's proffered justification, the evidence "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action [such] that a reasonable factfinder could rationally find them unworthy of credence." Fuentes, 32 F.3d at 765 (internal citations omitted).[5] Thus, to discredit an employer's proffered reason(s), a plaintiff "cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the

---

5. "[I]f a plaintiff has come forward with sufficient evidence to allow a finder of fact to discredit the employer's proffered justification, she need not present additional evidence of discrimination beyond her prima facie case to survive summary judgment." Burton v. Teleflex Inc., 707 F.3d 417, 427 (3d Cir. 2013).

"This is because the factfinder may infer from the combination of the prima facie case, and its own rejection of the employer's proffered reason, that the employer engaged in the adverse employment action for an invidious reason." Id. at 427.

employer is wise, shrewd, prudent, or competent." Id. at 765; · Davis v. Pittsburgh Pub. Sch., 930 F.Supp.2d 570, ·601 (W.D. Pa. 2013) ("The court is neither permitted to get involved in the subjective business decisions of the employer, nor set its own employment ·standards for the employer, unless ·there is evidence of discrimination.").

■■■ A plaintiff "may satisfy this standard by demonstrating, through admissible evidence, that the employer's articulated reason was not merely wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 413 (3d Cir. 1999) (quoting Keller v. Orix Credit All., Inc., 130 F.3d 1101, 1108 (3d Cir. 1997)). "The fact that an employee disagrees with an employer's evaluation of [him] does not prove pretext." Farzan v. Vanguard Grp., Inc., 582 Fed.Appx. 105, 108 (3d Cir. 2014) (quoting Billet v. CIGNA Corp., 940 F.2d 812, 825 (3d Cir. 1991)). The plaintiff must "present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision." Robinson v. Mondelez Int'l, Inc., 228 F.Supp.3d 448, 455 (E.D. Pa. 2017) (citation omitted).

■■■ Importantly, where an employer relies on particular criticisms for the adverse employment action, "the issue is not whether the [ ] criticisms of [the plaintiff] were substantiated or valid.... [T]he question is whether [the employer] *believed* those criticisms to be accurate and actually relied upon them." Steward v. Sears Roebuck & Co., 231 Fed.Appx. 201, 210 (3d Cir. 2007) (citing Fuentes, 32 F.3d at 766–67) (emphasis added); see also Kargbo v. Philadelphia Corp. for Aging, 16 F.Supp.3d 512, 526 (E.D. Pa. 2014) ("What is at issue is the perception of the decision maker, not the plaintiff's view of his own performance.") (quoting Billet v. CIGNA Corp., 940 F.2d 812, 825 (3d Cir. 1991)).

■■■ Mid–Atlantic argues that the record merely reflects Plaintiff's disagreement with its decision to terminate him— not age discrimination. Highlighting Plaintiff's performance improvement plans, Mid–Atlantic stresses that *even if* Sarah Balmer's assessments of his work performance were inaccurate, her good faith belief that Plaintiff exhibited deficient performance does not reflect a discriminatory animus such that Mid–Atlantic's decision is "unworthy of credence." [6] Mid–Atlantic makes a similar argument with respect to Plaintiff's "independent investigation" into Balmer's own performance issues. It asserts that Jennifer Kelly's determination that Plaintiff was working outside the scope of his position, and that his conduct was inappropriate and unprofessional, is not probative of whether or not his age was the real reason behind the decision to terminate him. (Def.'s Mot. Summ. J. 16–19.)

In response, and in an effort to establish pretext, Plaintiff makes three primary arguments, all of which contend that Mid–Atlantic's proffered justifications for his termination are "incredible" (which corresponds to the first method of demonstrating pretext).

First, he argues that John Fredericks, a "decision maker," had "no personal knowledge regarding the basis for any write-ups [or] Performance Improvement Plans" regarding Plaintiff. (Pl.'s Resp. 14–15.) Plaintiff further points out that a Wayne Fisher and Jennifer Kelly, both Maplewood employees, also did not have personal knowledge of the write-ups and/or alleged performance deficiencies underlying Plaintiff's performance action plans. (Pl.'s Resp. 15.)

---

**6.** Sarah Balmer did not provide deposition testimony in this case.

Plaintiff does not explain or otherwise elaborate on how this information is probative of pretext. As noted above, in moving for summary judgment Mid–Atlantic primarily relies upon the January and May 2012 performance action plans, and a third plan dated June 19, 2012, all prepared by Sarah Balmer.[7] Plaintiff does not point to evidence suggesting that Balmer, who placed him on the performance action plans, did not have direct knowledge of his performance, and thus lacked a good faith belief that his performance was deficient. Accordingly, Fredericks, Fisher, and Kelly's alleged lack of personal knowledge regarding Plaintiff's allegedly deficient performance is of no moment. Nor does Plaintiff point to evidence suggesting that Fredericks and/or Kelly did not rely on these action plans in good faith in ultimately making the decision to terminate him.

In the absence of such evidence, I conclude that—with respect to Plaintiff's "poor work performance" and "failure to meet the expectations of his performance improvement plans"—Plaintiff has failed to demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in these proffered reasons for his termination. Ziegler v. Delaware Cty. Daily Times, 128 F.Supp.2d 790, 807 (E.D. Pa. 2001). In other words, Plaintiff has failed to identify record evidence from which a reasonable fact finder could conclude Mid–Atlantic's facially legitimate, non-discrimi-

natory reasons for his termination are "unworthy of credence."

Plaintiff's second "pretext" argument is that, to the extent he was fired for failing to report fraud to Human Resources, the record reflects that he *did* in fact report these issues. (Id. at 16.) As to this argument, I first observe that failure to report fraud has not been designated by Mid-Atlantic as a proffered justification for Plaintiff's termination. Rather, Mid–Atlantic cites to Plaintiff's poor work performance, failure to meet the requirements of his various performance improvement plans, and going outside the scope of his position to investigate his supervisor as its legitimate, non-discriminatory reasons for his firing—all of which were included within his "Termination of Employment" notice. (Def.'s Ex. R.)

It is true that Plaintiff's "Termination of Employment" notice also listed "[f]ailure to report fraud to HR, compliance hotline, or Mid–Atlantic corporate office" as a policy violation. However, the same document elaborates on this issue and states that Plaintiff only "brought up" the alleged fraud after he himself had been placed on a performance action plan. As noted, Plaintiff admitted that he began investigating Balmer during the same month that he was placed on his first performance action plan. Plaintiff's efforts to highlight just one portion of his termination notice do not demonstrate that any of Mid–Atlantic's facially legitimate reasons for his firing are

---

**7.** Wayne Fisher testified that he was not Plaintiff's supervisor. He did state that Sarah Balmer brought certain things to his attention regarding Plaintiff's performance, such as supervision of the maintenance team, in approximately March or April of 2012. (Fisher Dep. 28:11–13; 31:16–23.) Although he could not remember specific details, Fisher also recalled that "Sarah had concerns that [Plaintiff] was unable to provide her with information that she had requested." (Id. at 32:13–19.) Fisher further testified that Balmer in-

formed him during the winter of 2011/2012 that she had concerns with Plaintiff's performance during a snow storm (i.e., that the snow was not properly shoveled and cleared from the Maplewood property). (Id. at 36:2–5.) Plaintiff's highlighting of Fisher's testimony does not refute or cast doubt upon the "core facts" proffered by Mid-Atlantic in support of its decision to terminate him, or that those reasons are unworthy of credence. Kautz v. Met–Pro Corp., 412 F.3d 463, 467 (3d Cir. 2005).

"unworthy of credence." Moreover, that an employer relies on certain justifications as its bases for termination does not mean that additional justifications undermine its position during litigation. See Proudfoot v. Arnold Logistics, LLC, 629 Fed.Appx. 303 (3d Cir. 2015), reh'g denied (Nov. 2, 2015) ("That [the defendant] offered [an additional] incident as an additional justification for its decision in an administrative proceeding does not undermine [the defendant's] proffered reliance on the [plaintiff's other misconduct] as the main reason for his termination.").

Finally, Plaintiff maintains that Mid–Atlantic "shifted its rationale" when it decided to terminate him—from poor work performance to failing to report fraud. (Pl.'s Resp. 16.) Plaintiff insists that an employer's shifting rationale for termination can be probative of pretext. Although it is true that "shifting" reasons may be probative of pretext, I conclude that "this is not a case where [the defendant] first identified one basis for the termination and later abandoned, changed, or exchanged that reason for an unrelated or inconsistent reason." Vernon v. A & L Motor Sales, 2009 WL 866851, at *8 (W.D. Pa. Mar. 30, 2009), aff'd sub nom. Vernon v. A & L Motors, 381 Fed.Appx. 164 (3d Cir. 2010). Here, as noted, Mid–Atlantic has pointed to Plaintiff's poor work performance, his failure to meet the goals of his performance improvement plan, as well as his going outside the scope of his position to investigate Balmer as the grounds for his termination. Those grounds were provided to Plaintiff in his notice of termination, and Mid–Atlantic has continued to rely upon those grounds during this litigation. As such, Plaintiff's third argument does not create a genuine dispute of a material fact such that a reasonable fact finder could conclude that Mid–Atlantic's proffered reasons for his termination are "unworthy of credence."

 Assessing the record in the light most favorable to Plaintiff, I conclude that—with respect to his age discrimination claims—he has failed to demonstrate that any of Mid–Atlantic's facially legitimate, non-discriminatory reasons for his termination are pretextual. That is, Plaintiff has failed to present evidence "contradicting the core facts put forward" by Mid–Atlantic as the legitimate reasons for its decision. Kautz v. Met–Pro Corp., 412 F.3d 463, 467 (3d Cir. 2005). Accordingly, Mid–Atlantic's motion will be granted as to Plaintiff's age discrimination claims.[8]

8. Plaintiff makes one passing statement that "similarly situated managers over the age of 40" were "targeted" by Defendant and also terminated. (Pl.'s Surreply 8.) Under the second method of establishing pretext, a plaintiff must point to evidence "with sufficient probative force such that a factfinder could conclude by a preponderance of the evidence that age was a motivating or determinative factor in the [adverse] employment decision." Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 644–45 (3d Cir. 1998). A plaintiff may accomplish this by showing that the employer has discriminated against other persons within the plaintiff's protected class. Armstrong v. Wes Health Sys., 188 F.Supp.3d 478, 485–86 (E.D. Pa. 2016).

For the same reasons articulated in Carter v. Mid–Atl. Healthcare, LLC, 228 F.Supp.3d 495 (E.D. Pa. 2017), I conclude here that Plaintiff has not met his burden of establishing the second method of pretext. "[S]tatistical evidence of an employer's 'pattern or practice' of discrimination may be probative of pretext." Ezold v. Wolf, Block, Schorr & Solis–Cohen, 983 F.2d 509, 542–43 (3d Cir. 1992). However, "raw data" unaccompanied by a sufficient analytical context "does not support a finding of invidious intent." Cridland, 929 F.Supp.2d at 388–89. In Von Rudenborg v. Di Giorgio Corp., 2011 WL 4594220 (D.N.J. Sept. 30, 2011)—a case relied upon by Plaintiff—the court ruled that the plaintiff failed to establish pretext despite the fact that the defendant employer had terminated five older employees over the years. ("Plaintiff has only provided a list of older employees who have been terminated, with-

## B. *Plaintiff's FMLA Claims—Interference & Retaliation*

The FMLA "entitles eligible employees to take up to 12 work weeks of unpaid leave annually for any of several reasons, including the onset of a 'serious health condition' in an employee's spouse, child, or parent." Nevada Dep't of Human Res. v. Hibbs, 538 U.S. 721, 724, 123 S.Ct. 1972, 155 L.Ed.2d 953 (2003) (citing 29 U.S.C. § 2612(a)(1)(C)). The statute contains "two relatively distinct provisions." Callison v. City of Philadelphia, 430 F.3d 117, 119 (3d Cir. 2005). First, an employer is prohibited from taking action "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA. 29 U.S.C. § 2615(a)(1). A claim arising under section § 2615(a)(1) is known as an "interference" claim. Callison, 430 F.3d at 119. Second, the FMLA makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA. 29 U.S.C. § 2615(a)(2). A claim under section § 2615(a)(2) is referred to as a "retaliation" or "discrimination" claim. Callison, 430 F.3d at 119. Mid–Atlantic has moved for summary judgment on both of Plaintiff's FMLA claims.

### 1. Plaintiff's FMLA Retaliation Claim

"To succeed on an FMLA retaliation claim, a plaintiff must show that "(1) he invoked his right to FMLA-qualifying leave, (2) he suffered an adverse employment decision, and (3) the adverse action was causally related to his invocation of rights." Ross v. Gilhuly, 755 F.3d 185, 193 (3d Cir. 2014) (quoting Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d

294, 302 (3d Cir. 2012)). "Because FMLA retaliation claims require proof of the employer's retaliatory intent, courts have assessed these claims through the lens of employment discrimination law. Accordingly, claims based on circumstantial evidence have been assessed under the burden-shifting framework established in McDonnell Douglas[.]" Lichtenstein, 691 F.3d at 302.

Regarding Plaintiff's prima facie case, Mid–Atlantic concedes that Plaintiff requested FMLA protected leave and suffered an adverse employment action. (Def.'s Mot. Summ. J. 21.) However, Mid–Atlantic argues that Plaintiff cannot demonstrate, as a matter of law, that there was a causal connection between his leave request and the decision to terminate him. (Id.)

In the FMLA retaliation context, where the "temporal proximity" between the protected activity and adverse action is "unusually suggestive," the Third Circuit has recognized that this "is sufficient standing alone to create an inference of causality and defeat summary judgment." Lichtenstein, 691 F.3d at 307 (citing LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007)). In Lichtenstein, the Third Circuit concluded that seven (7) days between the protected activity and adverse action was "in the realm" of what the court had previously accepted as an unusually suggestive temporal proximity. Id. at 307.

Here, Plaintiff asserts that he submitted his FMLA paperwork to Jennifer Kelly on June 18, 2012. He was terminated just two (2) days later, on June 20, 2012. Viewed in the light most favorable to Plaintiff, a rea-

out any perspective on the broader context of the company's treatment of older employees as a class."). Here, Plaintiff has not supplied a breakdown of how many employees worked

at Maplewood, how many employees were over 40, or how many employees were placed on performance action plans.

sonable jury could conclude that the timing of Plaintiff's termination was "unusually suggestive" of a retaliatory motive to infer a causal link between his protected activity and the adverse action.

Under the McDonnell Douglas framework, the burden now shifts to Mid–Atlantic to articulate a facially legitimate, non-discriminatory reason for Plaintiff's termination. Mid–Atlantic again relies on the same reasons discussed *supra* with respect to Plaintiff's age discrimination claim. My previous discussion of Mid–Atlantic's legitimate, non-discriminatory reasons applies with equal force to Plaintiff's FMLA retaliation claim. As such, I conclude that Mid–Atlantic has met its "relatively light" burden, and the burden of production now shifts back to Plaintiff to demonstrate pretext.

■■■ Regarding pretext, Mid–Atlantic again stresses that Plaintiff cannot discredit its reasons for firing him such that a retaliatory animus may be reasonably inferred. With respect to Plaintiff's FMLA retaliation claim, the record reflects the following:

Plaintiff testified that he submitted his FMLA paperwork to Jennifer Kelly on June 18, 2012. Later that same evening, Sarah Balmer emailed several fellow Mid–Atlantic employees stating that she intended to terminate Plaintiff two weeks later, on July 3, 2012. Her email expressly stated that Jennifer Kelly was "in agreement with this decision." (Pl.'s Ex. S.) On June 19, 2012, the next day, Balmer put Plaintiff on yet another performance improvement plan, which was set to expire on July 3, 2012. On June 20, 2012, just two days after submitting his FMLA paperwork, Plaintiff was terminated during a meeting with Jennifer Kelly and John Fredericks—roughly two weeks before his performance action plan was set to expire. (Def.'s Ex. R.) As noted, Sarah Balmer did not participate in

this meeting, and it is unclear from the record why this meeting occurred when it did.

When viewed in the light most favorable to Plaintiff, and given the unusually suggestive temporal proximity between his protected activity and termination, a reasonable jury could conclude that Mid–Atlantic's proffered reasons for Plaintiff's termination are "unworthy of credence" in the specific context of his FMLA retaliation claim. See Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 311 (3d Cir. 2012) ("We can imagine circumstances in which the timing of [an adverse] decision could lead a fact finder to infer that the employee would not have been fired absent her taking of leave (if, for example, a supervisor who had been aware of problems with an employee did not decide to fire the employee until she took leave, and the supervisor based the firing on the incidents of which the employer had already been aware).") (quoting Kohls v. Beverly Enterprises Wisconsin, Inc., 259 F.3d 799, 806 (7th Cir. 2001)). As discussed *supra*, Plaintiff was alleged to have repeatedly not met the expectations of his performance improvement plans, but was kept on as an employee for several months. Nevertheless, he was terminated just two days after engaging in a protected activity under the FMLA. A fact finder could conclude that—in the specific context of Plaintiff's FMLA retaliation claim— Mid–Atlantic's proffered justifications of Plaintiff's poor work performance and failure to meet the expectations of his performance action plans are "weak" and/or "implausible."

I note that Mid–Atlantic has also offered an additional facially legitimate, non-discriminatory justification for Plaintiff's termination—his going "outside the scope" of his position to monitor Sarah Balmer's attendance. But the temporal proximity be-

tween the protected activity and Plaintiff's termination is a key distinguishing factor in the retaliation analysis. Mid–Atlantic does not dispute that Plaintiff reported the findings of his "independent investigation" to Stephanie Massey, which occurred prior to her termination. (Def.'s SOF ¶ 57.) Thus, a fact-finder could reasonably conclude that Mid–Atlantic knew about Plaintiff's conduct in monitoring Balmer, but did not take disciplinary action against him until *after* he submitted his request for FMLA leave. See Kimes v. Univ. of Scranton, 126 F.Supp.3d 477, 495 (M.D. Pa. 2015) ("[F]actors such as . . . the timing of an employee's dismissal . . . [can] raise an inference of pretext which would make summary judgment for the employer inappropriate.").[9] Accordingly, Mid–Atlantic's motion for summary judgment will be denied with respect to Plaintiff's FMLA retaliation claim.

I recognize that I reached a different conclusion in my analysis of Plaintiff's age discrimination claims. However, age discrimination and FMLA retaliation claims require proof of different elements and inferences. It is therefore possible that, when examined in the appropriate context, a Plaintiff can meet his burden of establishing pretext for one claim but not another. Such is squarely the case here because of the unusually suggestive temporal proximity between Plaintiff's protected activity and the adverse employment decision, which applies only to Plaintiff's FMLA retaliation claim, but not to his age discrimination claims.

### 2. Plaintiff's FMLA Interference Claim

In order to make out a claim for interference under the FMLA, a plaintiff must establish that "(1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA." Ross v. Gilhuly, 755 F.3d 185, 191–92 (3d Cir. 2014). In order "for an interference claim to be viable, the plaintiff must show that FMLA benefits were actually withheld." Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 598 Fed.Appx. 109, 113 (3d Cir. 2015) (citation omitted). "[T]he employee need not show that he was treated differently than others[, and] the employer cannot justify its actions by establishing a legitimate business purpose for its decision." Thus, "[b]ecause the FMLA [interference claim] is not about discrimination, a McDonnell Douglas burden-shifting analysis is not required." Ross, 755 F.3d at 192.

Mid–Atlantic argues that Plaintiff's interference claim must be dismissed because it is duplicative of his FMLA retaliation claim (i.e., Plaintiff was terminated in close proximity to his request for FMLA protected leave). (Def.'s Mot. Summ. J. 23–24.) Mid–Atlantic correctly points out that some district courts within the Third Circuit have recognized that, where an interference claim is similar in both form and substance to a retaliation

9. See also Straka v. Comcast Cable, 897 F.Supp.2d 346, 359 (W.D. Pa. 2012) ("[I]f the defendant proffers a bagful of legitimate reasons, and the plaintiff manages to cast substantial doubt on a fair number of them, the plaintiff may not need to discredit the remainder. That is because the factfinder's rejection of some of the defendant's proffered reasons may impede the employer's credibility seriously enough [such] that a factfinder may rationally disbelieve the remaining proffered reasons, even if no evidence undermining those remaining rationales in particular is available.") (internal citations and quotations omitted).

claim, the interference claim is more appropriately analyzed as a retaliation claim. See e.g., Mascioli v. Arby's Rest. Grp., Inc., 610 F.Supp.2d 419, 432 (W.D. Pa. 2009) ("Plaintiff's argument with respect to her interference claim is that defendant took an adverse employment action because she requested leave. This is, in essence, identical to her retaliation claim[.]"); Atchison v. Sears, 666 F.Supp.2d 477, 489 (E.D. Pa. 2009) ("[The plaintiff's] interference claim is identical to his retaliation claim, and premised on the same allegation that [the defendant] took adverse employment action against him because he requested FMLA leave. He cannot escape the McDonnell Douglas analysis to prove his case merely by affixing an 'interference' label to one of his duplicative claims.").

Notwithstanding the cases cited above, the Third Circuit has expressly held "that firing an employee for a valid request for FMLA leave *may* constitute interference with the employee's FMLA rights as well as retaliation against the employee." Erdman v. Nationwide Ins. Co., 582 F.3d 500, 509 (3d Cir. 2009) (emphasis added). However, the precise circumstances under which a plaintiff may advance both retaliation and interference claims is not entirely clear. See Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 314 n.25 (3d Cir. 2012) ("It is not clear to us that Erdman necessarily guarantees that plaintiffs have an automatic right to claim interference where [such a] claim is so clearly redundant to the retaliation claim. In recent years, several federal courts of appeals have affirmed dismissal of interference claims that … were duplicative of the plaintiffs' retaliation claims."); see also Beese v. Meridian Health Sys., Inc., 629 Fed.Appx. 218, 223 n.3 (3d Cir. 2015) ("The District Court suggested that [the plaintiff's] FMLA interference claim should be dismissed because it is duplicative of his

FMLA retaliation claim. Because summary judgment on the FMLA interference claim is appropriate notwithstanding its similarity to the FMLA retaliation claim, we need not decide whether and under what circumstances duplicative FMLA claims may be dismissed simply because they are duplicative.").

One of the most recent decisions in this circuit to address this issue denied the employer's motion for summary judgment where the plaintiff alleged that he was not only terminated for requesting FMLA leave (retaliation), but that he was also denied benefits (interference) as a result of his termination. See Kohler v. TE Wire & Cable LLC, 2016 WL 885045, at *10 (D.N.J. Mar. 8, 2016), reconsideration denied, 2016 WL 1626956 at *5 (D.N.J. Apr. 25, 2016).

In Kohler, the court reasoned:

Defendant contends that Plaintiff's claim for interference should be dismissed on summary judgment as duplicative of his claim for retaliation. [Defendant] is correct that courts in this district have dismissed interference claims as redundant of claims for retaliation. However, in those cases, the interference claims were dismissed where the plaintiffs failed to allege that they were denied any FMLA entitlements.

. . .

The Court will not dismiss Plaintiff's interference claim as duplicative of his retaliation claim. Unlike the plaintiff in Lichtenstein who did not claim that any benefits were actually withheld, plaintiff here has alleged that [Defendant] withheld his FMLA benefits by terminating his employment during his medical leave covered under the FMLA. Stated differently, Plaintiff claims that Defendant interfered with his FMLA rights by cutting short the 12 weeks of leave which

he [ ] believes he was afforded under the Act.

Kohler, 2016 WL 885045, at \*10 (internal quotations and citations omitted).

Here, with respect to Plaintiff's retaliation claim, he alleges that he was a protected individual under the FMLA and suffered an adverse employment action that was causally connected to his exercising his rights. (Compl. ¶ 25.) On the other hand, with respect to his interference claim—and like the plaintiff in Kohler—he asserts that he was entitled to and denied leave under the FMLA. (Id.)

Viewed in the light most favorable to Plaintiff, and in the absence of clear guidance from the Third Circuit, I cannot conclude as a matter of law that the circumstances comprising Plaintiff's interference claim are "so clearly redundant" to his retaliation claim such that it should be dismissed as duplicative. Lichtenstein, 691 F.3d at 314 n.25. The Third Circuit's decision in Erdman instructs that a plaintiff's termination for making a valid request for FMLA leave *may* constitute interference with his FMLA rights, and Kohler persuasively cautions that summary judgment should be denied where a plaintiff's termination allegedly resulted in benefits being withheld. Accordingly, Mid–Atlantic's motion for summary judgment will be denied as to Plaintiff's FMLA interference claim.

### C. *Plaintiff's Request for Punitive Damages*

 Mid–Atlantic argues that Plaintiff's request for punitive damages must be dismissed. It points out that punitive damages are not recoverable under the ADEA, the PHRA, or the FMLA. See Thomas v. St. Mary Med. Ctr., 22 F.Supp.3d 459, 476 (E.D. Pa. 2014) (recognizing that the plaintiff could not "seek punitive damages as they are not recoverable under the FMLA"); Zurik v. Woodruff Family Servs., 2009 WL 4348826, at \*2 (W.D. Pa.

Dec. 1, 2009) (acknowledging that it is "well settled that punitive damages are not available under the PHRA" or ADEA) (citing Gagliardo v. Connaught Labs., Inc., 311 F.3d 565, 570 n.3 (3d Cir. 2002)) (emphasis omitted). Indeed, Plaintiff does not dispute that punitive damages are unavailable under these statutes. (See Pl.'s Resp. in Opp. to Def.'s SOF ¶ 74.) Accordingly, I will grant Mid–Atlantic's motion to the extent it seeks dismissal of Plaintiff's request for punitive damages.

### IV. CONCLUSION

Mid–Atlantic's motion for summary judgment will be granted in part and denied in part. The motion will be granted as to Plaintiff's age discrimination claims. The motion will be denied as to Plaintiff's FMLA retaliation and interference claims. Finally, the motion will be granted insofar as it seeks dismissal of Plaintiff's request for punitive damages.

An appropriate Order follows.

